[35 NYS3d 416]

In the Matter of MARIA C.R., Appellant, v RAFAEL G., Respondent.

Second Department, July 13, 2016

APPEARANCES OF COUNSEL

*Bruno Joseph Bembi*, Hempstead, for appellant.

*Theresa Kloeckener*, Lynbrook, Attorney for the Child.

## OPINION OF THE COURT

SGROI, J.

On July 30, 2014, the petitioner filed a petition in the Family Court, Nassau County, pursuant to Family Court Act article 6, to be appointed as guardian of a child who was then 20 years old. The petitioner also sought an order making special findings so as to allow the child to apply for special immigrant juvenile status under federal law. A hearing on the petition was repeatedly adjourned for various reasons, and ultimately scheduled to take place in January 2015. In the interim, however, on October 16, 2014, the child attained the age of 21 years. As a result, the Family Court, Nassau County, issued an order dated November 26, 2014 which, without a hearing, dismissed the guardianship petition "due to lack of jurisdiction." On this appeal, we examine the propriety of that order and whether certain federal statutes may, in effect, extend the Family Court's jurisdiction to entertain a guardianship petition and issue an order of special findings.

Background

We begin with the underlying factual background to this petition and appeal. Maria L.R. (hereinafter the mother) and Rafael G. (hereinafter the father) are the parents of Santos A.G.R. (hereinafter the child), who was born to them in El Salvador in October 1993. According to the child's affidavit, which was made part of the application in this case, the mother died in 2007 or 2008, when the child was about 14 years old, and the father thereafter essentially abandoned the child and his 10 siblings. The child further averred that when the mother was alive, the father "fought with her a great deal" while the child was present, "was usually drunk," and "would grab [the] mother and threaten to beat her," and that after the mother died, the father "drank a great deal and found another woman and left [the children] alone at home" and "did not support [the children]." According to the child, the children were supported in El Salvador by an older brother living in the United States who sent "money to pay for our necessities."

In 2010, the child left El Salvador and came to the United States to live with a brother in Texas. He lived with the brother for about one year, and then came to New York, where he lived with another brother for two years. In or around December 2013, the child moved in with his friend, Maria C.R. (hereinafter the petitioner). According to the child, the petitioner "has been like a mother to me," "helps me a lot," and "gives me food, . . . clothing, and a place to live."

Also, according to his affidavit, the child has had virtually no contact and no support from the father since coming to the United States. The child stated that the father has "never asked me to return to live with him," "has no plan to live with me in the future," and "has no plans for my future." Finally, the child averred that he was "afraid" to return to El Salvador because "[w]hen I was living in El Salvador there were numerous people killed or robbed by the various criminal gangs in my home town."

The Petition and Motion for an Order of Special Findings

On July 30, 2014, when the child was 20 years old, the petitioner filed a petition in Family Court, Nassau County, pursuant to Family Court Act article 6, to be appointed guardian of the child. The petitioner alleged that "I have taken care of [the child] since I've met him, making sure his needs are met," "I encourage him to continue going to school and better his life," "I feed him and give him all the emotional support he needs," and "I will continue caring for him into adulthood and even after that I will always take care of him." On July 19, 2014, the child consented to the appointment of a guardian until he reached the age of 21.

By notice of motion dated September 1, 2014, the petitioner moved for an order, inter alia, making special findings so as to enable the child to petition the United States Citizenship and Immigration Services (hereinafter USCIS) for special immigrant juvenile status (hereinafter SIJS) pursuant to 8 USC § 1101 (a) (27) (J). This motion was supported by, inter alia, the above-referenced affidavit of the child, and a "Waiver of Process, Renunciation, or Consent to Guardianship" form signed by the father, who consented to the appointment of the petitioner as guardian, and who acknowledged that "I have abandoned my son" and "I have no plans to support him in the future."

Court Proceedings

On September 19, 2014, the Family Court adjourned commencement of a hearing on the petition and the motion until

October 3, 2014 so that the petitioner's husband could be fingerprinted, and to await a response from the Office of Children and Family Services (hereinafter OCFS) to the petition and motion. The court also appointed an attorney for the child.

On October 3, 2014, the Family Court further adjourned the hearing date to October 14, 2014 to await processing of the fingerprints, which had been obtained on October 2, 2014, and for "a report from OCFS." At that time, the petitioner's attorney informed the court that the child would be turning 21 years old on October 16, 2014, and requested a "temporary order of guardianship today" and to "take the testimony on the issue of special findings this morning." The court denied those requests.

On November 26, 2014, the Family Court noted that the fingerprints had been furnished and received an assurance from the petitioner that she was willing to assume guardianship over the child. The court then indicated that it would grant the order of guardianship, instructed the petitioner to wait for that order, and scheduled a hearing on the petitioner's motion for January 14, 2015. Following a recess, the court informed the petitioner that after examining "the papers more closely I realized that [the child] is already 21 years old . . . [and therefore] I am without the jurisdiction to give you an order of guardianship at this time."

In an order dated November 26, 2014, the Family Court issued an "Order on Motion" denying the petitioner's motion for the issuance of an order, inter alia, making special findings so as to enable the child to petition for SIJS. In a separate order, also dated November 26, 2014, the Family Court dismissed the guardianship petition, with prejudice, "due to lack of jurisdiction."

Discussion

The petitioner contends that it was error for the Family Court to twice adjourn the proceeding when the child was about to turn 21 years old, and that there was sufficient evidence in the record to grant the guardianship petition and motion for special findings prior to the child's 21st birthday. The attorney for the child argues that there was no jurisdictional defect to granting the guardianship petition since it was filed prior to the child's 21st birthday, and since the Family Court could grant the guardianship petition nunc pro tunc to the date the petition was filed.

The Family Court is a court of limited subject matter jurisdiction and "cannot exercise powers beyond those granted to it by

statute" (*Matter of Johna M.S. v Russell E.S.*, 10 NY3d 364, 366 [2008]; *see Matter of Riedel v Vasquez*, 88 AD3d 725, 726 [2011]). Family Court Act § 661 (a) governs "[g]uardianship of the person of a minor or infant." That statute, which had previously been interpreted as applying only to persons under the age of 18 (*see Matter of Vanessa D.*, 51 AD3d 790 [2008]; *Matter of Luis A.-S.*, 33 AD3d 793, 794 [2006]), was amended by the legislature in 2008 in response to the federal law and regulations creating special immigrant juvenile status and making it available to immigrants under the age of 21 (*see* Merril Sobie, 2010 Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 661, 2016 Pocket Part at 138-139). The statute now provides, in pertinent part, that "[f]or purposes of appointment of a guardian of the person pursuant to this part, the terms infant or minor shall include a person who is less than twenty-one years old who consents to the appointment or continuation of a guardian after the age of eighteen" (Family Ct Act § 661 [a]; *see Matter of Trudy-Ann W. v Joan W.*, 73 AD3d 793 [2010]).

By the clear wording of the statute, the Family Court's subject matter jurisdiction to grant the guardianship petition herein expired on the date of the child's 21st birthday, or October 16, 2014 (*see Matter of Luis A.-S.*, 33 AD3d at 794). While SCPA 1707 (2) provides that the term of appointment of a guardian does not expire when the child turns 18 where the child "consents to the continuation of or appointment of a guardian after his or her eighteenth birthday," that provision states that in such case the term of appointment *"expires on [the child's] twenty-first birthday*, or after such other shorter period as the court establishes upon good cause shown" (emphasis added). Nor is there any authority for the contention by the attorney for the child that "there was no jurisdictional defect" because the Family Court "had full statutory authority to issue Letters of Guardianship nunc pro tunc to the date of the filing of the petition." Indeed, the opposite is true. Where a court is divested of subject matter jurisdiction, it cannot exercise such jurisdiction by virtue of an order nunc pro tunc (*see Davis v State of New York*, 22 AD2d 733, 733 [1964] ["(w)here, as here, the subject matter is jurisdictional, the error cannot be corrected by an order *nunc pro tunc"*]; *see also Stock v Mann*, 255 NY 100, 103 [1930]).

It would, of course, have been better practice for the Family Court to have timely ruled on the guardianship petition.

Indeed, while the court twice adjourned this matter to await fingerprint results, there is no statutory fingerprinting requirement in a guardianship proceeding, and it appears to be simply a matter of Family Court protocol that any individual over the age of 18 living in the proposed guardian's home must be fingerprinted prior to the commencement of a hearing (*see Matter of Herson O.A.M. [Ana D.V.—Gloria E.M.L.]*, 128 AD3d 827 [2015]). Of course, the fingerprinting of members of the household does facilitate criminal background checks to ensure that appointment of the guardian would be in the child's best interests. However, this would serve little purpose where, as here, the child was already living in the proposed guardian's home, and the granting of the guardianship petition would have changed nothing other than to facilitate the issuance of an order making the requisite special findings to enable the child to petition for SIJS. We further observe that the proper course of action in cases where a Family Court Judge is refusing to commence a special findings hearing or is allegedly improperly delaying a proceeding may be to file a mandamus petition to compel the court to promptly conduct the hearing and render a determination on the motion (*see Matter of Levy v Rooney*, 129 AD3d 728 [2015]; *Matter of Orok-Edem v Family Ct., Kings County*, 17 AD3d 470 [2005]).

Nevertheless, regardless of whether the Family Court improvidently exercised its discretion in adjourning this matter, as explained above, it correctly concluded that once the child had reached the age of 21 years, it lacked the authority to grant a guardianship petition (*see Matter of Hei Ting C.*, 109 AD3d 100, 106 [2013]).

Special Findings

We now turn to the issue of whether federal statutory law can be utilized to counter the above conclusion, at least to the extent of extending the Family Court's jurisdiction to entertain a guardianship petition and related motion for SIJS findings in circumstances such as those at bar where the child attains the age of 21 after the petition has been filed. We begin with a background discussion of the SIJS statute.

In 1990, Congress created SIJS to address the issue of undocumented and unaccompanied children. These children lacked lawful immigration status and were subject to the threat of deportation and vulnerable to exploitation. As originally enacted, the legislation defined an eligible immigrant as being one who *"has been declared dependent on a juvenile court*

located in the United States and has been deemed eligible by that court for long-term foster care" (Immigration Act of 1990, Pub L 101-649, tit I, § 153 [a], 104 US Stat 4978, 5005, adding 8 USC § 1101 [a] [27] [J] [i] [emphasis added]). In 2008, Congress amended the SIJS provision. In the "William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008," Congress expanded the definition of who qualified as a "special immigrant juvenile," enabling more children to qualify for that status (Pub L 110-457, 122 US Stat 5044). These amendments, inter alia, broadened eligibility to include, in addition to children declared dependent on a juvenile court, those who had been placed in the custody of "an individual or entity *appointed by a State or juvenile court*" (Pub L 110-457, 122 US Stat 5044, 5079, amending 8 USC § 1101 [a] [27] [J] [i] [emphasis added]). Following the 2008 amendments, the United States Department of Homeland Security (hereinafter the Department of Homeland Security) issued a memorandum explaining that the new language added to the definition of "Special Immigrant Juvenile" meant that "a petition filed by an alien on whose behalf a juvenile court *appointed a guardian* now may be eligible" (Mem of Donald Neufeld, USCIS Acting Associate Director, Domestic Operations, & Pearl Chang, USCIS Acting Chief, Office of Policy & Strategy, *Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions* at 2 [Mar. 24, 2009] [emphasis added]). Thus, as per the 2008 amendments, a "special immigrant" is a resident alien who is under 21 years old, is unmarried, and *has been either declared dependent on a juvenile court or legally committed to the custody of an individual appointed by a state or juvenile court* (see 8 USC § 1101 [a] [27] [J] [i]; 8 CFR 204.11).

In New York, a child may request that the Family Court, recognized as a juvenile court under federal regulations (*see* 8 CFR 204.11 [a]), issue an order making special findings and a declaration as part of the process to petition USCIS for SIJS (*see e.g. Matter of Jisun L. v Young Sun P.*, 75 AD3d 510 [2010]). Specifically, the findings of fact must establish that: (1) the child is under 21 years of age; (2) the child is unmarried; (3) the child is dependent upon a juvenile court or legally committed to an individual appointed by a state or juvenile court (*see* 8 USC § 1101 [a] [27] [J] [i]); (4) reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis (*see* 8 USC § 1101 [a] [27] [J] [i]); and (5) it is not

in the child's best interests to be returned to his or her home country (*see* 8 USC § 1101 [a] [27] [J] [ii]; 8 CFR 204.11 [c]). With the declaration and special findings, the eligible child may then seek the consent of the Department of Homeland Security for SIJS (*see* 8 USC § 1101 [a] [27] [J] [iii]). Moreover, pursuant to federal law, a child "may not be denied special immigrant status under [SIJS] after December 23, 2008 based on age if the alien was a child on the date on which the alien applied for such status" (8 USC § 1232 [d] [6]). The term "child" for purposes of this statute "means an unmarried person under twenty-one years of age" (8 USC § 1101 [b] [1]).

 Given this background, the question arises as to whether a New York Family Court may still issue an order making special findings and a declaration allowing a child to petition the USCIS for SIJS where, as here, the child has reached 21 years of age but no order of guardianship has yet been obtained. We conclude that, under such circumstances, a special findings order cannot be granted.

As noted, in order for an alien child to petition the USCIS for SIJS, a court must make certain special findings. Included among these are that the child is under 21 years of age; that the child is unmarried; and that the child has been declared dependent upon a juvenile court or legally committed to an individual appointed by a state or juvenile court.

> "The requirement that a child be dependent upon the juvenile court or, alternatively, committed to the custody of an individual appointed by a state or juvenile court, ensures that the process is not employed inappropriately by children who have sufficient family support and stability to pursue permanent residency in the United States through other, albeit more protracted, procedures" (*Matter of Hei Ting C.*, 109 AD3d at 106).

In the case at bar, the request to the Family Court for the SIJS declaration was made when the child was under 21, and, as indicated, federal law states that "an alien . . . may not be denied [SIJS] . . . based on age if the alien was a child on the date on which the alien applied for such status" (8 USC § 1232 [d] [6]) (i.e, when the child submits Form I-360 "Petition for Amerasian, Widow[er], or Special Immigrant" to the Department of Homeland Security, USCIS). In addition, it appears clear that federal law permits an alien, who is under the age of 21, to apply for SIJS status even though he or she has yet to be

declared dependent upon a state juvenile court. Indeed, the application form specifically asks whether the child has been declared a dependent of a juvenile court; and if the answer is "no," the form requests an explanation. Such inquiry indicates that the application may be filed in a situation such as the one at bar where the child was about to turn 21 but had yet to obtain the special findings from Family Court.

However, no such application was filed in this case, nor had the Family Court issued any order before the subject child turned 21 years old. Thus, even though the child filed his Family Court petition before he turned 21, once he attained that age, the Family Court was divested of subject matter jurisdiction to grant the guardianship petition. Consequently, after that point, the Family Court could not have made a special finding, as is necessary to the SIJS declaration, that the "child is dependent upon a juvenile court or legally committed to an individual appointed by a state or juvenile court." Nor does the federal statute alter this fact. The statute only states that SIJS status may not be denied simply because a child "ages out" during the SIJS process. It does not, and indeed cannot, be read to confer subject matter jurisdiction on the Family Court to grant a guardianship petition for a "child" who is already 21 years old. Therefore, even assuming that the child in this case met all of the other requirements for an SIJS declaration, and even if he had filed his application form with the Department of Homeland Security before he turned 21 years old, his ineligibility for a guardianship petition precluded the Family Court from issuing such a declaration. Put differently, guardianship status, which the Family Court can only grant to individuals under 21, is a condition precedent to a declaration allowing a child to seek SIJS.

In sum, once the subject child turned 21 years old, the Family Court no longer possessed authority to determine the guardianship petition. Furthermore, since dependency upon a juvenile court is a prerequisite for the issuance of an order making the declaration and specific findings to enable a child to petition for SIJS, the Family Court also properly denied the petitioner's SIJS motion. Accordingly, the order dated November 26, 2014 is affirmed.

HALL, J.P., AUSTIN and HINDS-RADIX, JJ., concur.

Ordered that the order dated November 26, 2014 is affirmed, without costs or disbursements.