IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 1, 2022

IN RE JOSE A.

Appeal from the Juvenile Court for Rutherford County
No. TC-4209  Donna Scott Davenport, Judge
_____

No. M2021-00828-COA-R3-JV
_____

A relative of an undocumented minor filed a guardianship petition in juvenile court.  The petition also requested that the court make special findings to enable the minor to apply for special immigrant juvenile status under federal law.  The juvenile court issued a guardianship order with special findings but only after the minor turned 18.  On appeal, the relative raises issues with the court's special findings.  We conclude that the juvenile court lost subject matter jurisdiction to appoint a guardian once the minor turned 18.  So we do not reach the merits of this appeal.  We vacate the court's decision with directions to dismiss the guardianship petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON II, J., joined.

Timothy J. Gudmundson, Nashville, Tennessee, for the appellant, Reina Idalia Echeverria Garcia.

**OPINION**

**I.**

Jose A. was born in Honduras.  For most of his life, he lived there with his mother and younger brother.  He had no relationship with his father.

In his teens, local gangs pressured Jose to join their ranks.  He resisted.  But then a person fired shots in front of his home, which Jose took as a warning against further resistance.  Fearing for his safety, Jose left home and traveled to the United States.  He

crossed the border in September 2020. Federal authorities placed him with his paternal aunt in Tennessee.

In November, the aunt petitioned the juvenile court to be appointed guardian for her seventeen-year-old nephew. *See* Tenn. Code Ann. § 34-2-103 (2021). The petition also requested that the court make special findings to enable Jose to apply for special immigrant juvenile status. *See* 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11 (2022). Among other things, the petition specifically requested a finding that reunification with Jose's parents was not possible due to abandonment.

The juvenile court magistrate's order granted the guardianship and made special findings. But the order did not contain a finding that Jose's parents had abandoned him. Rather, the juvenile court magistrate found that reunification with Jose's parents was not viable due to his age and the violence in Honduras.

Dissatisfied with the special findings, the aunt requested a de novo hearing before a juvenile court judge. *See* Tenn. Code Ann. § 37-1-107(d) (Supp. 2021). Because Jose's eighteenth birthday was fast approaching, the aunt requested an expedited hearing. The court granted the request and held a de novo hearing just twelve days before Jose's birthday. Both Jose and his aunt testified. The court also admitted into evidence a written statement from Jose's mother in Honduras.

The court entered an order granting the guardianship after Jose turned 18. The court also made special findings. But the court did not find abandonment, as the aunt had requested. Instead, the court found that "reunification with the child's parents [wa]s not viable due to the child's age."

## II.

The aunt contends that the juvenile court erred in failing to find that either parent abandoned or neglected the minor child. In her view, the court applied the wrong standard of proof. And the court's comments from the bench evidenced a misunderstanding of the proof necessary to establish abandonment in this context.

Before reaching these issues, we must determine whether the juvenile court had subject matter jurisdiction to issue the guardianship order. Tenn. R. App. P. 13(b); *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003) ("Appellate courts must address the issue of subject matter jurisdiction even if the issue is not raised in the trial court."). Without subject matter jurisdiction, a court lacks the "power to adjudicate a particular type of controversy," and any resulting order is void. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). If we determine that the juvenile court "lacked subject matter jurisdiction, [we] must vacate the judgment and dismiss the case without

reaching the merits of the appeal." *First Am. Tr. Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001).

The existence of subject matter jurisdiction depends on "the nature of the cause of action and the relief sought." *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). Here, the petition sought the appointment of a guardian for Jose and asked the court to issue special factual findings to enable Jose to apply for special immigrant juvenile status.

Juvenile courts have limited jurisdiction. *Stambaugh v. Price*, 532 S.W.2d 929, 932 (Tenn. 1976). Unknown at common law, they "may exercise only such jurisdiction and powers as have been conferred on them by statute." *In re D.Y.H.*, 226 S.W.3d 327, 330 (Tenn. 2007); *In re S.L.M.*, 207 S.W.3d 288, 296 (Tenn. Ct. App. 2006). Juvenile courts have concurrent jurisdiction with circuit and chancery courts to "appoint a guardian of the person of a child." Tenn. Code Ann. § 37-1-104(a)(2) (Supp. 2021); *see also id.* §§ 34-2-101 to -106 (2021) (providing for the appointment of a guardian for a minor). But in this context, "child" means "[a] person under eighteen (18) years of age." *Id.* § 37-1-102(b)(5)(A) (Supp. 2021). Jose turned 18 before the juvenile court entered the guardianship decree. Only under limited circumstances does a juvenile court retain continuing jurisdiction over a child after the child's eighteenth birthday. *Id.* § 37-1-102(b)(5)(B), (G). None of those circumstances are present here.

The juvenile court had subject matter jurisdiction to appoint a guardian and issue the special findings when the petition was filed. *See In re Domingo C.L.*, No. M2016-02383-COA-R3-JV, 2017 WL 3769419, at *7 (Tenn. Ct. App. Aug. 30, 2017). But the court's power to appoint a guardian terminated when Jose turned 18. *See* Tenn. Code Ann. §§ 37-1-104(a)(2), -102(b)(5)(A); *cf. In re D.Y.H.*, 226 S.W.3d at 330 (explaining that a juvenile court's jurisdiction over a dependency and neglect petition terminates when "the child reaches the age of eighteen"). A juvenile court has no authority under Tennessee law to appoint a guardian for an adult. Tenn. Code Ann. § 37-1-104(a)(2); *see id.* § 37-1-102(b)(3) (defining an adult as "any person eighteen (18) years of age or older").

Nor do we find such authority in federal law. The aunt sought relief for her nephew under the Immigration and Nationality Act of 1990. The Act was designed "'to protect abused, neglected, or abandoned children'" who entered the United States illegally. *Simbaina v. Bunay*, 109 A.3d 191, 196 (Md. Ct. Spec. App. 2015) (citation omitted). Eligible children may apply for special immigrant juvenile status to avoid deportation. *Id.* The eligibility requirements appear as a definition of "special immigrant" in the Act. *See* 8 U.S.C. § 1101(a)(27)(J). As relevant here, "special immigrant" means

(J) an immigrant who is present in the United States--

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the

3

custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that--

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter[.]

8 U.S.C. § 1101(a)(27)(J); *see also* 8 C.F.R. § 204.11 (governing special immigrant juvenile classification).

An immigrant child cannot apply for this classification without a qualifying order from a juvenile court with the specific factual findings described in the statute. *See* 8 C.F.R. § 204.11(c), (d); *In re Domingo C.L.*, 2017 WL 3769419 at *4. For these purposes, "juvenile court" means a state court "that has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles." 8 C.F.R. § 204.11(a). So subject matter jurisdiction over the underlying proceeding depends on state law. *See id.*; *In re Domingo C.L.*, 2017 WL 3769419, at *7 (looking to state law to determine whether chancery court qualified as a "juvenile court" under the federal statute); *In re Danely C.*, No. M2016-02054-COA-R3-JV, 2017 WL 5901022, at *5-6 (Tenn. Ct. App. Nov. 29, 2017) (same). And, under Tennessee law, a juvenile court may only appoint a guardian for a child under the age of 18. *See State in Interest of Jimenez*, 199 So. 3d 1218, 1220 (La. Ct. App. 2016) (explaining that "the federal immigration law only gives a juvenile court jurisdiction to hear the matter if the juvenile court would have jurisdiction under state law").

By federal statute, immigrant children may apply for special immigrant juvenile status as long as they are "under 21 years of age" when the application is submitted. 8 C.F.R. § 204.11(b)(1); *see* 8 U.S.C. § 1101(b)(1) (defining "child" for immigration

4

purposes as "an unmarried person under twenty-one years of age"). But the federal statute cannot be read as an expansion of the limited jurisdiction of our juvenile courts. *See In re Maria C.R.*, 35 N.Y.S.3d 416, 422 (App. Div. 2016) (holding that the federal statute "does not, and indeed cannot, be read to confer subject matter jurisdiction" on a state juvenile court to appoint a guardian for an adult). *But see O.Y.P.C. v. J.C.P.*, 126 A.3d 349, 352 (N.J. Super. Ct. App. Div. 2015) (concluding "that it would defeat the purpose of the hybrid federal-state scheme Congress created if state family courts decline to hear [custody] cases solely because a juvenile is over the age of eighteen, so long as the juvenile is still under the age of twenty-one"). Here, under Tennessee law, the juvenile court lacked the power to appoint a guardian for Jose after his eighteenth birthday.[1] Tenn. Code Ann. §§ 37-1-104(a)(2), -102(b)(5)(A).

## III.

Because the juvenile court lacked subject matter jurisdiction to appoint a guardian for Jose after he turned 18, the court's order was void. *See Dishmon*, 15 S.W.3d at 480. So we vacate the juvenile court's order and remand with instructions to dismiss the guardianship petition.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

---

[1] Courts in other jurisdictions have reached differing results in these cases based on the applicable state law. *See, e.g.*, *A.C. v. E.C.N.*, 89 So. 3d 777, 779-80 (Ala. Civ. App. 2012) (ruling that the juvenile court lost subject matter jurisdiction over a dependency action when the child turned 18 before the court order was entered); *In re Henrry P. B.-P.*, 173 A.3d 928, 941-42 (Conn. 2017) (holding that the state probate court retained jurisdiction even though the juvenile turned eighteen during the pendency of the proceedings based on a specific grant of statutory authority); *State in Interest of Jimenez*, 199 So. 3d at 1220 (holding that state court lacked power to adjudicate petition filed by individual who was no longer a minor under state law); *In re Dany G.*, 117 A.3d 650, 656 (Md. Ct. Spec. App. 2015) (finding that Maryland courts had jurisdiction to make special findings until the age of 21 based on state statute); *Recinos v. Escobar*, 46 N.E.3d 60, 65-67 (Mass. 2016) (holding that the Probate and Family Court had jurisdiction to make the special findings for "youth between the ages of eighteen and twenty-one" under the "broad equity power" granted to the state courts); *State v. L.P.L.O.*, 381 P.3d 846, 849-52 (Or. Ct. App. 2016) (concluding that juvenile court's jurisdiction did not terminate when juvenile turned 18 based on long-standing Oregon law); *In Interest of B.A.L.*, No. 01-16-00136-CV, 2017 WL 3027660, at *6 (Tex. App. July 18, 2017) (ruling that trial court no longer had jurisdiction to appoint a conservator for child after he turned 18). "Cases from other jurisdictions . . . are always instructive, sometimes persuasive, but never controlling in our decisions." *Summers Hardware & Supply Co.*, 794 S.W.2d 358, 362 (Tenn. Ct. App. 1990).