OPINION OF THE COURT
William C. Donnino, J.
Petitioner Jose H. seeks an order from this court setting out special findings that would make him eligible for special immigrant juvenile status which, if granted by immigration authorities, would permit him to stay in the United States.[1] (See 8 USC § 1101 [a] [27] [J]; 8 CFR 204.11.) The application for special findings is denied, as the petitioner is not “dependent” on a “juvenile court” within the meaning of the governing federal statute.
Petitioner’s Judgments
On April 21, 2014, in the Supreme Court, Nassau County, the petitioner was charged by indictment, as an adult, with assault in the first degree and related crimes, based on his having inflicted serious physical injury on the complainant by means of a machete. On July 16, 2014, the petitioner pleaded guilty to assault in the first degree. On February 20, 2015, the court decided to adjudicate the petitioner (who was 17 years of age at the time of the crime) a youthful offender and sentence him to IV3 to 4 years in state prison. On the date of that sentence, the petitioner also pleaded guilty under a separate indictment to promoting prison contraband in the first degree, for possession of a homemade knife while he was detained in jail pending the resolution of the assault charge, and, in the same sentencing proceeding the court also adjudicated the petitioner a youthful offender for that felony, and accorded him a time-served sentence on that adjudication.
*326 Summary of Decision
Special immigrant juvenile status is intended to provide relief from deportation to children who are in the United States illegally and who, because abuse, neglect, or abandonment prevents reunification with one or both of their parents, find themselves in need of the intervention of a “juvenile court”— typically in the form of guardianship, foster care, or other provisions for their care and custody. When a “juvenile court” has such a child before it, federal law permits it to make certain special findings which can serve as the basis for a special immigrant juvenile application with immigration authorities. Among these findings are that the child is “dependent” on the “juvenile court”; that the child is unable to reunite with one or both parents due to parental abuse, neglect, or abandonment; and that it is in the child’s best interest to remain in the United States. One of the bases for a finding that a child is “dependent” on a “juvenile court” is that “such a court has legally committed [the child] to, or placed [him or her] under the custody of, an agency or department of a State.” (8 USC § 1101 [a] [27] [J] [i].)
Here, the petitioner argues that he is “dependent” on a “juvenile court” because he was “legally committed to, or placed under the custody of, an agency or department of a State” when this court—after the petitioner’s conviction of felony assault for ambushing and hacking an unarmed man with a machete— adjudicated him a youthful offender and sentenced him to state prison.
This strained interpretation of the federal statute fails. The “juvenile court” in New York State is the Family Court. While the New York Supreme Court is a court of general jurisdiction and a judge of the Supreme Court may sit to adjudicate a family court case, this Supreme Court judge did not do that in the petitioner’s case. Indeed, the Family Court was without jurisdiction to entertain the petitioner’s case because he was charged, as an adult, with a felony. In other words, the petitioner was not legally committed or placed in custody by a “juvenile court,” as required for special immigrant juvenile status (see 8 USC § 1101 [a] [27] [J]) because this court was not exercising “juvenile court” jurisdiction when it sent him to state prison.
The petitioner is wrong in claiming that a youthful offender adjudication is a type of “juvenile court” adjudication. For eligible young adults who have been convicted of a crime, *327 youthful offender treatment ameliorates some of the collateral consequences of that conviction by replacing it with a youthful offender adjudication and keeping the records relating to it confidential, and youthful offender treatment permits a more lenient prison sentence. But, in contrast to a juvenile delinquent or a juvenile offender, a youthful offender is someone who was subject to adult criminal liability, was tried in an adult court, using adult criminal procedures, and was sent to an adult prison for a maximum indeterminate term of up to four years.
Thus, as federal courts have recognized, youthful offender adjudications are adult, rather than juvenile, proceedings in New York.
Consequently, the petitioner does not qualify as “dependent” on a “juvenile court” within the meaning of the federal statute—and he certainly is not the type of vulnerable child in need of “juvenile court” intervention that special immigrant juvenile status was intended to aid. Accordingly, his application is denied.
Background
Special Immigrant Juvenile Status
In 1990, Congress created the status of special immigrant juvenile to provide relief from deportation to unaccompanied or otherwise neglected children who were in the United States illegally. (See 8 USC § 1101 [a] [27] [J] [defining special immigrant juvenile]; Matter of Marcelina M.-G. v Israel S., 112 AD3d 100, 101 [2d Dept 2013] [setting out history of special immigrant juvenile statute]; Matter of Hei Ting C., 109 AD3d 100, 102 [2d Dept 2013] [same].) To be eligible for special immigrant juvenile status, a child had to be a child under federal immigration law (that is, under age 21 and unmarried); declared “dependent” on a “juvenile court”; eligible for long-term foster care; and, in addition, a state “juvenile court” had to make a factual finding that it was not in the child’s best interest to return to his or her native country. (8 CFR 204.11 [c] [implementing regulations for special immigrant juvenile statute]; Marcelina M.-G. at 107.)
In 1997, Congress became concerned that special immigrant juvenile status was being abused by visiting foreign students who were having themselves declared wards of the court and eligible for long-term foster care. (Marcelina M.-G. at 107.) Consequently, Congress amended the statute to require that *328 the child be eligible for long-term foster care due to abuse, abandonment, or neglect, “in order to limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected, or abused children.” (HR Rep 105-405, 105th Cong, 1st Sess at 130, reprinted in 1997 US Code Cong & Admin News at 2941; Marcelina M.-G. at 107-108.) At the same time, Congress modified the dependency requirement—that is, that a child be “declared dependent on a juvenile court”—to include as well children who were “legally committed to, or placed under the custody of, an agency or department of a State.” (Marcelina M.-G. at 107-108.)
Significantly, Congress also added a requirement that immigration authorities consent to the granting of special immigrant juvenile status. (Id.) This requirement was intended to limit the granting of this status to children who were genuinely vulnerable. (Id.) Immigration authorities were therefore expected to determine that “neither the dependency order nor the administrative or judicial determination of the alien’s best interest was sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect.” (HR Rep 105-405 at 130; see also Yeboah v United States Dept. of Justice, 345 F3d 216, 222 [3d Cir 2003]; 76 Fed Reg 54978-01 [III] [B] [1] [2011] [Commentary on proposed rule 8 CFR 204.11; proposed new implementing regulations of special immigrant juvenile statute, citing legislative history of statute and providing, “If USCIS determines that the State court order is sought primarily to obtain lawful immigration status, USCIS will deny consent”]; Interoffice Mem by William R. Yates, Assoc Director for Operations, U.S. Citizenship & Immigration Servs [USCIS], Mem No. 3—Field Guidance on Special Immigrant Juvenile Status Petitions at 2 [May 27, 2004] [citing statute’s legislative history and directing immigration authorities to determine whether dependency order was sought for primary purpose of special immigrant juvenile application, rather than for relief from state court from abuse or neglect]; USCIS, Special Immigrant Juvenile Status: Info for Juvenile Cts at 2 [undated information sheet] [citing “primary purpose” standard].)
In 2008, Congress again amended the statute, this time expanding the class of juveniles it protected by adding another basis for the “dependency” requirement: now, this element could *329 be satisfied not only by a finding that a child either was declared dependent by a “juvenile court,” or was committed to or placed under the custody of a state agency or department by a “juvenile court,” but also by a finding that the child was placed in the custody of an individual or entity appointed by the state or “juvenile court.” (Marcelina M.-G. at 108.) This amendment was intended to bring within the application of special immigrant juvenile status children for whom a “juvenile court” had appointed a guardian. (Matter of Hei Ting C., 109 AD3d at 103.)
Thus, after this, its most recent amendment, the federal statute provided for three types of “juvenile court” proceedings—collectively termed “dependency” proceedings—that would make a child eligible for special immigrant juvenile status. (See 76 Fed Reg 54978-01 [III] [A] [3] [“The use of the term ‘dependency’ throughout this proposed rule encompasses dependency, commitment, or custody as provided in amended section 101(a)(27)(J)(i) of the Act”].) A “juvenile court” could find a child “dependent” upon it within the meaning of the federal statute when that child
“has been declared dependent on a juvenile court (as in child-protection proceedings), has been placed in the custody of a state agency or department (as in juvenile-delinquency proceedings), or has been placed in the custody of an individual or entity ‘by a [s]tate or juvenile court’ (as in guardianship proceedings).” (In re Guardianship of Guaman, 879 NW2d 668, 672 [Minn Ct App, May 16, 2016].)
Congress also replaced the requirement that a child be eligible for long-term foster care on the ground of abuse, neglect or abandonment with the requirement that reunification of the child with one or both parents be nonviable because of abuse, neglect, or abandonment, or a similar basis under state law. (Matter of Hei Ting C. at 103-104.) These, at present, are the eligibility requirements for special immigrant juvenile status.
The process for obtaining special immigrant juvenile status is “ ‘a unique hybrid procedure that directs the collaboration of state and federal systems.’” (H.S.P. v J.K., 223 NJ 196, 209-210, 121 A3d 849, 857 [2015], quoting Matter of Marisol N.H., 115 AD3d 185, 188 [2014].) In this two-step process, a state “juvenile court” makes the special findings that establish a child’s eligibility—that the child is under 21 years old and unmarried; that the child is “dependent” on the “juvenile court,” *330 on one of the three bases set out in the statute; that reunification with one or both parents is not viable because of abuse, neglect, or abandonment; and that it is not in the child’s best interest to return to his or her native country. (H.S.P. v J.K., 223 NJ at 210, 121 A3d at 857-858; Matter of Marisol N.H., 115 AD3d at 188-189.) With these special findings, the child then applies to federal immigration authorities, who determine whether the state court’s special findings are adequately supported (see Yates Mem at 4-5) and whether the primary purpose of the child’s application to the state “juvenile court” was to seek relief by that “juvenile court” from abuse, neglect, or abandonment—or was merely to obtain special immigrant juvenile status. (Matter of Marisol N.H., 115 AD3d at 189; Yeboah, 345 F3d at 222; 76 Fed Reg 54978-01 [III] [B] [1]; Yates Mem at 2.)
The theory behind this two-step process is that state juvenile courts have the resources and expertise to make findings regarding abuse, neglect, and abandonment, and determinations of what is in the best interests of a child, while federal authorities retain ultimate power to regulate immigration. Thus, “Congress chose to rely on state courts to make [initial factual findings] because of their special expertise in making determinations as to abuse and neglect issues, evaluating the best interest factors, and ensuring safe and appropriate custodial arrangements.” (H.S.P. v J.K., 223 NJ 196, 211, 121 A3d 849, 858-859 [2015] [internal quotation marks and citations omitted].) “The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child’s best interests.” (223 NJ at 211-212, 121 A3d at 859.)
Discussion
The petitioner’s application for special findings does not satisfy the requirement for special immigrant juvenile status of being “dependent” on a “juvenile court.” Eligibility under the statute requires that a child be an immigrant
“who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States.” (8 USC *331 § 1101 [a] [27] [J] [i] [emphasis added].)
While the petitioner was “legally committed to, or placed under the custody of, an agency or department of a State” (8 USC § 1101 [a] [27] [J] [i]), when this court sentenced him, he was not committed by a “juvenile court,” as required by the statute. Instead, that commitment was to state prison, for the commission of a crime, charged against the petitioner as an adult. It was nothing like child-protective, juvenile-delinquency, or guardianship proceedings, or any other “juvenile court” intervention providing “relief from abuse or neglect” (HR Rep 105-405 at 130), envisioned by Congress when it enacted the dependency requirement.[2] And that conclusion is not affected by the conversion of that criminal conviction to a youthful offender adjudication to relieve the petitioner of the collateral consequences of the conviction. (See People v Cook, 37 NY2d 591, 595 [1975] [“The primary advantage of (youthful offender) treatment is the avoidance of the stigma and practical consequences which accompany a criminal conviction”].)
New York law is unambiguous in providing that criminal liability begins at age 16, or as young as 13 for certain other serious felonies. (See Penal Law § 30.00 [1], [2] [setting out defense of infancy, and providing that persons under 16 years old are not criminally responsible, except that persons 13, 14, and 15 years old are criminally liable for certain serious felonies]; CPL 1.20 [42] [defining “Juvenile Offender” as a person either 13 years old and criminally responsible for murder or a sexually motivated felony, or 14 or 15 years old and criminally responsible for certain other serious felonies]; Family Ct Act § 301.2 [1] [defining “Juvenile delinquent” in pertinent part as a person between the ages of 7 and 16 who has “committed an act that would (be) a crime if committed by an adult” (emphasis added)]; CPL 725.10 [providing that, when a juvenile offender prosecution has been ordered removed from a criminal court to Family Court, the criminal action must *332 terminate and Family Court “assume jurisdiction” and commence a Family Ct Act art 3 juvenile delinquency proceeding].) In fact, New York’s justice system has been criticized for treating 16 and 17 year olds as adults rather than juveniles (see e.g. Raise the Age New York, http://raisetheageny.com [accessed July 1, 2016]), and the present Governor appointed a commission to prepare a plan to raise the age of juvenile jurisdiction to 18. (See Executive Order [Cuomo] No. 131 [Apr. 9, 2014]; Final Report of the Governor’s Commn on Youth, Public Safety & Justice [Jan. 2015].)
A youthful offender is one who was convicted of committing a crime when he is not yet age 19, but already above the age of criminal liability (16). (See CPL 720.10 [1] [defining term ‘Youth” for purposes of youthful offender eligibility as a person charged with a crime alleged to have been committed when the person was at least 16 but not yet 19, or a juvenile offender (i.e., a person as young as 13 charged with certain serious felonies, see supra at 331)].) Thus, by statutory definition, a youthful offender is not a juvenile in New York. (See United States v Vancier, 515 F2d 1378, 1380 [2d Cir 1975] [recognizing that a defendant who committed offense at age 17 was eligible to be a youthful offender, but too old to be a juvenile in New York; “the state juvenile court, the New York Family Court, does not have jurisdiction over him because he was over sixteen years of age at the time”].)
Further, a comparison of New York’s juvenile justice procedure and its youthful offender procedure makes it inarguably clear that youthful offenders are not juveniles. Juveniles are not prosecuted in criminal proceedings in the criminal courts, but in “delinquency” proceedings in Family Court. The basis of their delinquency liability is not the commission of a criminal act, but rather the commission of an act “that would [be] a crime if committed by an adult.” (Family Ct Act § 301.2 [1] [emphasis added].) A determination of guilt in a juvenile proceeding leads to a finding of delinquency, not a criminal conviction. (Family Ct Act § 380.1 [1].)
The differences between juvenile and adult prosecutions are even starker in the “disposition” phase of the delinquency case, the analogue to the sentencing phase in a criminal case. This begins with a threshold determination of whether the juvenile is in need of any “supervision, treatment, or confinement”— that is, whether he is in need of any sentence at all. (Family Ct Act § 352.1.) Then, if the court determines that the juvenile is *333 in need of such a sentence, the law provides a broad array of sentencing options, ranging from a conditional discharge through probation to “placement.” (Family Ct Act, art III, part 5 [setting out dispositions for juvenile delinquents, including conditional discharge, probation, and placement in a non-secure or secure juvenile facility with the Office of Children and Family Services].) Placement presents an array of options as well, ranging from placement in the juvenile’s own home to placement in foster care to placement in a juvenile facility, and the law requires that the court, except in the case of certain serious offenses, impose the least restrictive placement consistent with public safety and “the needs and best interests of the respondent.” (Family Ct Act § 352.2 [2].) Even the most severe sentence involves placement not in a prison, but a secure juvenile facility operated or supervised by the Office of Children and Family Services. (Family Ct Act §§ 353.3, 353.5.) And even then, except in the most serious cases, the placement is for a short period of time—generally 12 or 18 months—and can be continued only upon order of the court after a hearing. (Family Ct Act § 355.3.)
The procedure for a youthful offender is completely different. In fact—except for certain discretionary confidentiality provisions applicable only in cases charging misdemeanors (see CPL 720.15)—a potential youthful offender is treated just like every other adult criminal defendant. (See CPL 720.20.) For a felony (of which the petitioner was convicted), it is only after a defendant eligible to be granted youthful offender treatment is actually convicted that a court determines whether to grant him that treatment. Further, the standard used in this determination is the “interest[s] of justice” standard, not “the needs and best interest of the respondent” as in juvenile proceedings. (CPL 720.20 [1] [a].)[3] If the court does grant youthful offender treatment, it is only then, after conviction of a *334 felony, that the court vacates the conviction and replaces that conviction with a youthful offender adjudication. (CPL 720.20 [3].)
And even then, a youthful offender is subject to the same types of sentence as any other adult. This includes, as in the case of the petitioner here, a sentence to state prison, albeit the maximum indeterminate term is limited to four years. {See CPL 720.20 [3]; Penal Law § 60.02 [setting out sentences for youthful offenders].)[4]
Thus, in complete contrast to how juveniles are treated in New York’s Family Court, a youthful offender is subject to adult criminal liability, and tried in an adult criminal court, using adult criminal procedure and subject to an adult sentence. Youthful offenders, then, are indisputably adults and not juveniles.
It is for this reason that federal courts in a number of contexts have recognized that youthful offender proceedings are adult, rather than juvenile, proceedings in New York. (See e.g. United States v Cuello, 357 F3d 162, 168-169 [2d Cir 2004] [in context of calculating defendant’s base-offense level under sentencing guidelines, holding that youthful offender adjudication counted as an “adult conviction”; “a New York youthful offender adjudication is classified as an adult conviction under the laws of New York,” since “defendant was indisputably tried and convicted in an adult forum, and . . . defendant served his sentence in an adult prison” (internal quotation marks omitted)]; United States v Driskell, 277 F3d 150, 158 [2d Cir 2002] [in context of assessing criminal history points under sentencing guidelines, and after contrasting youthful offender treatment with juvenile delinquency and juvenile offender proceedings, holding that youthful offender adjudication qualifies as “adult conviction,” since defendant, “although seventeen, was tried and convicted in adult court, and received and served *335 what can be thought of as an ‘adult’ sentence”]; United States v Jones, 415 F3d 256, 263-264 [2d Cir 2005] [in context of determining whether defendant was career criminal under sentencing guidelines, holding that youthful offender adjudication qualified as “adult conviction” under New York law, since the defendant “(1) pleaded guilty to both felony offenses in an adult forum and (2) received and served a sentence of over one year in an adult prison for each offense”]; United States v Jones, 105 F Supp 3d 233 [ED NY 2015] [surveying Second Circuit cases holding that youthful offender adjudications qualify as “adult convictions” under New York law].)[5]
In fact, the Second Circuit long ago held that New York’s youthful offender treatment is not comparable to a juvenile delinquency proceeding under federal law. In United States v Vancier (515 F2d 1378 [2d Cir 1975]), the court determined that it was proper to exercise federal jurisdiction to prosecute a 17 year old—a juvenile under federal law—rather than defer to New York authorities. Federal law authorized such prosecution only when no state juvenile or “other appropriate” state court had jurisdiction. {Id. at 1380.) The court, recognizing that a 17 year old was too old to be prosecuted as a juvenile in New York, held that New York’s youthful offender proceedings were too dissimilar to federal juvenile proceedings to be “appropriate.” {Id. at 1380-1381.) “[T]here are several significant deficiencies in the New York youthful offender program, as compared to the federal juvenile delinquency system. These include the criminal nature of youthful offender proceedings up to the time of sentencing and the lack of special provisions for a mode of detention suitable for juveniles.” {Id. at 1381.) Thus, the Second Circuit has held that for those, such as the petitioner here, who committed their offenses at age 17, New York’s youthful offender treatment is not the same as, or even comparable to, a juvenile delinquency proceeding.
*336 The petitioner nonetheless argues that his youthful offender adjudication is a juvenile proceeding for the purpose of the special immigrant juvenile statute—and, consequently, satisfies the requirement under that statute that he be “dependent” on a state “juvenile court”—because a juvenile is defined under federal law as anyone under 21 years of age.
This proposition is incorrect. While the statute defining special immigrant juvenile status requires a state court to find that an immigrant is a juvenile under federal law, and, hence, under 21 years of age, this is a separate and independent requirement from the finding that that immigrant is “dependent” on a “juvenile court.” (See 8 CFR 204.11 [c] [1], [3] [implementing regulations for special immigrant juvenile statute, setting out separately requirements that applicant be under age 21 and that applicant be dependent on “juvenile court”].)
And the “dependency” on a “juvenile court” finding is governed by state, rather than federal law. (See 8 CFR 204.11 [c] [3] [explaining that immigrant must be “declared dependent upon a juvenile court ... in accordance with state law governing such declarations of dependency”];[6] In re Petition for Special Immigrant Juvenile, 2015 WL 3545456, *2 [Admin App Off, Citizenship & Immigration Servs, Dept of Homeland Sec 2015] [“The plain language of the statute and the regulations require that the court order be issued pursuant to the court’s jurisdiction over the petitioner as a juvenile under state law” (emphasis added)]; Leslie H. v Superior Ct., 224 Cal App 4th 340, 348-349, 168 Cal Rptr 3d 729, 736-737 [2014] [citing implementing regulations for proposition that dependency finding is governed by state law, and noting that, under amended special immigrant juvenile statute, “state courts may now make *337 SIJ (status) findings whenever jurisdiction can be exercised under state law to make care and custody determinations, and are no longer confined to child protection proceedings alone”], citing In re Minor Children of J.E., 432 NJ Super 361, 370, 74 A3d 1013, 1018 [2013].)
Thus, an applicant might be under age 21—and so able to satisfy the age requirement of the special immigrant juvenile statute—but nonetheless be too old to be dependent on the “juvenile court” under state law. In fact, that was so in New York’s Family Court as to guardianship proceedings before recent amendments to the Family Court Act raised the age under which the Family Court could appoint a guardian for a child from age 18 to age 21. (See e.g. Matter of Vanessa D., 51 AD3d 790 [2d Dept 2008]; Matter of Zaim R., 43 AD3d 824, 824-825 [2d Dept 2007]; Matter of Luis A.-S., 33 AD3d 793, 793-794 [2d Dept 2006].) As one commentator explained, “while federal law said youths remain eligible for SIJ status up to age twenty-one, the issue of a court’s jurisdiction for the underlying guardianship or child protection case depended on state law.” (Theo S. Liebmann, Keeping Promises to Immigrant Youth, 29 Pace L Rev 511, 520 [spring 2009].)
Further, federal circuit courts have recognized that an applicant might be a juvenile under federal law—and so satisfy the age requirement for special immigrant juvenile status— until age 21, but still be too old to be dependent on a “juvenile court,” as required by the statute. (See also M.B. v Quarantillo, 301 F3d 109, 115-116 [3d Cir 2002] [recognizing that applicant would not be eligible for special immigrant juvenile status because, even though under age 21, he was over age 18, and so too old to obtain a dependency order from a New Jersey court under state law]; Boyron v Lynch, 604 Fed Appx 72, 74 [2d Cir 2015] [concluding that applicant could not be eligible for special immigrant juvenile status, since Connecticut juvenile court could not declare him “dependent” on it because he had reached age 18, and, under Connecticut law, juvenile courts had no jurisdiction over persons over age 18]; cf. F.L. v Thompson, 293 F Supp 2d 86, 88 n 2, 89 n 6 [D DC 2003] [citing implementing regulations and explaining that applicant could no longer obtain declaration of delinquency from Michigan juvenile court once he turned 18 because juvenile court would lose jurisdiction over him, but, if he obtained declaration of delinquency before age 18, he would still be eligible for special immigrant juvenile status until age 21].)
*338 Indeed, as discussed above (see n 3), the proposed new implementing regulations for the special immigrant juvenile statute recognize that an applicant might be under age 21 and still be too old to be dependent on the “juvenile court.” The regulations provide that, if an applicant is under age 21 and has obtained a dependency finding from a state “juvenile court,” but then “ages out”—that is, is no longer dependent on the “juvenile court” because he or she is too old for “juvenile court” jurisdiction under state law—immigration authorities will deem the dependency finding to still be in effect at the time the applicant applies for special immigrant juvenile status. (76 Fed Reg 54978-01 [III] [A] [3].)
Thus, contrary to the petitioner’s argument, his youthful offender adjudication and sentencing does not make him dependent upon a “juvenile court” within the meaning of the special immigrant juvenile statute merely because he remains a juvenile under federal law until age 21. (See Matter of Maria C.R. v Rafael G., 142 AD3d 165, 174 [2d Dept 2016] [special immigrant juvenile statute’s provision permitting granting of status after age 21 if application was filed with immigration authorities before age 21 does not authorize Family Court to grant guardianship and special findings in same circumstances; “(i)t does not, and indeed cannot, be read to confer subject matter jurisdiction on the Family Court to grant a guardianship petition for a ‘child’ who is already 21 years old”].)
To the extent that the petitioner argues that he satisfies the dependency requirement because he was committed to custody by a court that is empowered to exercise jurisdiction over Family Court juvenile matters, the argument is meritless. As the petitioner points out, this court, by virtue of being a court of general jurisdiction, is empowered to exercise jurisdiction over juvenile matters. (See NY Const, art VI, § 7 [a] [Supreme Court has “general original jurisdiction in law and equity”]; Family Ct Act § 114 [“(t)he provisions of this act shall in no way limit or impair the jurisdiction of the supreme court”]; Green v Montgomery, 95 NY2d 693, 699 [2001] [holding that, under New York Constitution, Supreme Court had concurrent jurisdiction with Family Court over juvenile delinquency proceeding]; Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 302.1 at 384 [Supreme Court has jurisdiction concurrent with Family Court, even over juvenile delinquency cases].)
But the dependency requirement of the special immigrant juvenile statute requires not just that the committing court be *339 empowered to exercise juvenile jurisdiction, but that it actually exercised that juvenile jurisdiction. Consequently, immigration authorities have held that a
"dependency or custody order issued by a court with jurisdiction over both adults and juveniles will only suffice if the record shows that the court exercised jurisdiction over the petitioner as a juvenile. See 8 C.F.R. § 204.11(c)(3) (requiring the court order to be in compliance with state law governing juvenile court dependency).” (In re Petition for Special Immigrant Juvenile, 2015 WL 3545456, *2 [Admin App Off, Citizenship & Immigration Servs, Dept of Homeland Sec, 2015]; see also In re Welfare of A.S., 882 NW2d 633 [Minn Ct App, July 5, 2016] [holding that juvenile court’s exercise of jurisdiction over, and sentencing applicant on, his “juvenile traffic offense” did not satisfy dependency requirement because “juvenile traffic offense” did not constitute a juvenile proceeding under Minnesota law].)
The petitioner, then, cannot satisfy the requirement of the special immigrant juvenile statute that he is “dependent” on a “juvenile court” because this court committed him to custody not as a juvenile, but as an adult—albeit an adult relieved of the collateral consequences of the conviction of a crime via the adjudication as a youthful offender—under New York law. Since dependency under the special immigrant juvenile statute must be determined under state law, the fact that a juvenile under federal immigration law is anyone under age 21 does not transform the petitioner’s youthful offender adjudication into a juvenile proceeding.
This failure to establish “dependency” on a “juvenile court” is dispositive of the instant application; fact-findings on the remaining special findings would be academic. (See Matter of Maria C.R. v Rafael G., 142 AD3d 165, 174 [2d Dept 2016] [“(S)ince dependency upon a juvenile court is a prerequisite for the issuance of an order making the declaration and specific findings to enable a child to petition for SIJS, the Family Court also properly denied the petitioner’s SIJS motion”]; Matter of Gabriela Y.U.M. [Palacios], 119 AD3d 581, 583 [2d Dept 2014] [describing determination of guardianship petition, and consequently establishment of dependency, was “threshold mat *340 ter” for issuing Special Findings].)[7] Accordingly, the petition for special findings is denied.

. “Jose H.” is a pseudonym, as the records of youthful offenders such as the petitioner are confidential. (See CPL 720.35.)

. Juvenile delinquency proceedings in Family Court satisfy the requirement that a child be “dependent” on a “juvenile court.” (See e.g. In re Guardianship of Guaman, 879 NW2d 668, 672 [Minn Ct App, May 16, 2016]; Eddie E. v Superior Court, 223 Cal App 4th 622, 167 Cal Rptr 3d 435 [2013]; In re Welfare of A.S., 882 NW2d 522 [Minn Ct App, July 5, 2016].) This is not surprising, since the purpose of juvenile delinquency proceedings, unlike that of criminal proceedings, is not punishment, but intervention on behalf of the child. (See Matter of Robert J., 2 NY3d 339, 346 [2004] [“The overriding intent of the juvenile delinquency article is to empower Family Court to intervene and positively impact the lives of troubled young people while protecting the public”].)

. For an eligible young adult convicted of a felony, youthful offender treatment, determined under the interest-of-justice standard, is discretionary. For a misdemeanor, it is mandatory, provided the young adult has not been adjudicated a youthful offender before. (CPL 720.20.)
The legal significance of prior youthful offender adjudications is another contrast between youthful offender and juvenile proceedings. A young adult who has a prior youthful offender adjudication for a felony cannot be accorded youthful offender treatment, notwithstanding his youth. (See CPL 720.10 [2].) Further, as noted above, a young adult convicted of a misdemeanor must be accorded youthful offender treatment, unless he has a prior youthful offender adjudication, in which case the court may deny youthful offender treatment (see CPL 720.20)—again, notwithstanding the defendant’s *334 youth. By contrast, a juvenile is a juvenile by virtue of his age, and so is treated as a juvenile no matter how many prior juvenile delinquency adjudications he or she may have.

. Further, while youthful offender treatment involves vacating a criminal conviction, this is intended to relieve the defendant of the collateral consequences of that conviction. (People v Drayton, 39 NY2d 580, 584 [1976]; People v Cook, 37 NY2d at 595.) It does not somehow transform an adult prosecution into a juvenile one. (See People v Gordon S., 89 AD2d 912, 913 [2d Dept 1982] [“Youthful offender status . . . permits the court to mete out fair punishment for a young adult’s crimes and transgressions yet mitigates future consequences in recognition of, inter alia, the youth’s lack of experience and the court’s hope for his future constructive life”].)

. In re Devison-Charles (22 I&N Dec 1362 [Bd Immigration App, Sept. 12, 2000, file No. A45 382 757]), cited by the petitioner, is not to the contrary. There, the Board of Immigration Appeals held that an alien’s youthful offender adjudication did not constitute a “conviction” for the purposes of removal under the immigration statute. (Id.) The Board did not determine what is dispositive in this case whether youthful offender proceedings constitute adult or juvenile proceedings under New York law. As for the Board’s dicta, opining that youthful offender proceedings are analogous to federal juvenile delinquency proceedings (id. at 1365-1368), that argument was rejected by the Second Circuit years before Devison-Charles was decided. See discussion of United States v Vancier (515 F2d 1378 [2d Cir 1975]), infra.

. The implementing regulations have not been updated to reflect the additional grounds of dependency (see In re Guardianship of Guaman, 879 NW2d 668, 671 n 2 [Minn Ct App 2016]; Leslie H. v Superior Ct., 224 Cal App 4th 340, 348-349, 168 Cal Rptr 3d 729, 735-737 [2014]), but the regulations nonetheless establish that the determination that a child be “dependent on a juvenile court” is governed by state law. (See Leslie H., 224 Cal App 4th at 349, 168 Cal Rptr 3d at 736.) Further, the proposed new regulations recognize that the age of majority, after which a juvenile court has no jurisdiction to make a dependency finding, varies from state to state, and further provides for situations in which a child “ages out” of dependency under state law (usually at age 18) but is still a juvenile (that is, under age 21) under federal law. (76 Fed Reg 54978-01 [III] [A] [3].) Thus, the new proposed implementing regulations, as well, recognize that dependency findings are governed by state law.

. Although not necessary and not the reason for the instant decision, the court would note that, even if the petitioner satisfied the predicate jurisdictional requirement of “dependency” on a “juvenile court,” there are significant credibility issues presented by his petition which would affect his ability to establish the other necessary special findings.
In his account of the assault, the petitioner in essence claims he acted in self-defense. But in his confession, the petitioner admitted hunting the complainant down because he wanted to “get back at him” because of a prior threat. After arming himself with a machete and recruiting two accomplices, he lay in wait for the complainant in the bushes outside his house and ambushed him when he came home, hacking at him with a machete and causing him serious physical injury; and he pleaded guilty to that first degree assault.
The petitioner also alleges in his petition that, at age 16, he “made the dangerous journey to the United States by himself,” being smuggled across the border by a coyote—that is, a human trafficker. But in his presentence interview, the petitioner admitted that his uncle brought him to the United States.
Similarly, in his petition, the petitioner speaks at length of his plans for the future if he is allowed to stay in the United States, including “starting a family of his own,” his desire to be a “role model” for others, and his determination not to act like “his own absent father.” Yet he makes no mention of the three-year-old son he has in El Salvador, whom he apparently has no intent of supporting or establishing a relationship with and whose best interest may be in having his father back in El Salvador.
Finally, the petitioner fails to account for his simultaneous youthful offender adjudication for promoting prison contraband in the first degree, for possessing a homemade knife while detained in jail awaiting resolution of his assault case.