James Edward Welsh, Presiding Judge
Roxana Villalta de Rubio ("Mother") appeals the circuit court's judgment granting her petition to dissolve her marriage to Santos E. Rubio Herrera ("Father"). Mother claims that the court erred in denying her request for an "Order of Special Findings" as to the parties' minor child ("Son") for purposes of applying for Special Immigrant Juvenile status with the federal government. We affirm.
I. Background
Mother and Father were married on December 22, 1997, in El Salvador. The parties have two children, a daughter, born in 1996, and Son, born in 1998. Mother and Father separated in 2003, when Father abandoned the family.
Sometime in 2005, Mother left the children in the care of her mother in El Salvador and unlawfully entered the United States. She settled in Saline County, Missouri. Ten years later, in April 2015, Son unlawfully entered the country to reunify with Mother. Son was apprehended by immigration officials and placed in the custody of the Department of Health and Human Services' Office of Refugee Resettlement. In May 2015, Son was released into Mother's custody pending disposition of his immigration case.
Nine months later, in February 2016, Mother filed a petition for dissolution of her marriage, pursuant to Chapter 452 RSMo.[1] Mother, Father, and Son all are citizens of El Salvador. None are United States citizens, nor do they have any valid immigration status. At the time of the dissolution proceedings, Mother and Son were living in Saline County, and Father's whereabouts were unknown. Mother served Father by publication, and an appropriate affidavit of publication was timely filed with the court.
In her petition, Mother requested sole legal and sole physical custody of Son, who was seventeen years old at the time. Mother alleged that Father had abandoned Son in 2003 and that she is the only parent willing and able to care for him. She also *568 alleged that Son "is subject to removal proceedings" (i.e. , deportation) and "may be eligible to file an application for Special Immigrant Juvenile Status with the United States Citizenship and Immigration Services (USCIS)." To facilitate that, Mother sought "three Special Findings of Fact which will assist [Son] residing in the United States." In short, the findings Mother requested were (1) that Son is dependent upon the trial court, (2) that reunification with one or both parents is not viable due to abandonment, pursuant to state law, and (3) that it is not in Son's best interest to be returned to El Salvador.
On June 14, 2016, Mother and Son appeared for a "default" dissolution hearing. Father did not appear. Mother testified that she was seeking sole legal and physical custody of Son as Father had not communicated with or supported him since 2003. She stated that it would be in Son's best interest to remain in the United States in her custody because Son would be in danger from gangs if he returned to El Salvador and because there is no one there to care for him.
Son testified that he was seventeen years old and a citizen of El Salvador.[2] He stated that he did not want to return to his home country because of safety concerns and because there was no one to care for him there. Son confirmed that Father had abandoned him in 2003. He stated that he was currently living with his mother and wished to remain in her custody.
Mother's counsel offered a proposed parenting plan that granted her sole legal and sole physical custody of Son on the basis that "this arrangement [would] be in the best interest of the child due to [Father]'s abandonment and neglect of [Son]." In addition, Mother's counsel filed a proposed Order of Special Findings of Fact and a memorandum in support. The memorandum explained that the order is a required predicate for Son to apply to the federal government for Special Immigrant Juvenile status and that the requisite findings could be obtained only from a state or juvenile court having jurisdiction over the minor child.
On June 30, 2016, the circuit court issued its Judgment of Dissolution finding that service by publication was proper and that Father had abandoned both Mother and Son. The court granted Mother "sole legal and physical custody and care of [Son]" and incorporated Mother's proposed parenting plan into the judgment. The court denied Mother's request for an Order of Special Findings of Fact, however, noting that:
[W]ithout personal service on [Father], a guardian-ad-litem for the minor child, the child being a party to the action, and one of the child's parents being a United States citizen, the requested special findings would be inappropriate....
Mother thereafter obtained a sworn affidavit from Father, in which he attested that he refused to appear for any hearing on the matter and waived personal service. Father reaffirmed his abandonment of Son and attested that he would continue to abandon Son even if Son were returned to El Salvador.
On July 13, 2016, Mother filed a motion to reconsider her request for the Order of Special Findings of Fact based on Father's waiver of personal service and sworn affidavit. Mother argued in her motion that an Order of Special Findings of Fact should have been issued because (1) it was established that the trial court has jurisdiction over Son, and (2) the court's granting sole legal and physical custody to Mother and adopting her parenting plan satisfied the *569 second and third requested special finding of facts, in that it was not in Son's best interest to return to his home country but to stay in the United States in her custody and care.
At a hearing on Mother's motion, her counsel explained the purpose of the special findings of fact and why only a state court can issue such findings. Without receiving any further testimony, the court denied the motion to reconsider. The court also declined Mother's request for findings of fact and conclusions of law on that decision.
Mother appeals.
II. Standard of Review-Dissolution Case
In reviewing a dissolution of marriage action, we will affirm the trial court's judgment unless we find that it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Cox v. Cox , 504 S.W.3d 212, 216 (Mo. App. 2016) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976) ). "In assessing the sufficiency of the evidence, we examine the evidence and all its reasonable inferences in the light most favorable to the judgment, and we disregard all evidence and inferences to the contrary." Id. at 216-17. We review questions of law de novo. Pearson v. Koster , 367 S.W.3d 36, 43 (Mo. banc 2012).
III. Point One
Mother contends that the circuit court erred in denying her request for an Order of Special Findings of Fact (in addition to the dissolution judgment), which would permit Son to apply to the federal government for "Special Immigrant Juvenile" status, in that she "clearly established" a basis for the following findings:
(1) [Son] is dependent upon this State's (family) court or has been legally committed or placed under the custody of an agency or department of [the] State, or an individual or entity appointed by a State or juvenile court[;]
(2) [Son]'s reunification with one or both parents is not viable due to abuse, neglect, or abandonment, or similar basis found under State law[;] and
(3) It is not in [Son]'s best interest to be returned to his or his parents' previous country of nationality or country of last habitual residence of El Salvador[.]
See 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11. Mother asserts that she asked the court to issue these findings because Father had abandoned Son and because Son was "concurrently a minor in removal (deportation) proceedings [and would be] attempting to request consideration for Special Immigrant Juvenile Status in a separate immigration proceeding."
A. Special Immigrant Juvenile Status
We first examine the basis for Mother's request. The federal Immigration and Nationality Act provides a path for undocumented immigrant children who have been abused, neglected, or abandoned to gain lawful permanent residency in the United States by obtaining Special Immigrant Juvenile status. In re Guardianship of Guaman , 879 N.W.2d 668, 671-72 (Minn. App. 2016) (citing 8 U.S.C. § 1101(a)(27)(J) ; 8 CFR § 204.11 ).[3] A child who obtains such status may become a naturalized United States citizen after five *570 years. Eddie E. v. Superior Court , 234 Cal. App. 4th 319, 326, 183 Cal.Rptr.3d 773 (Cal. App. 2015).
This process was established in 1990, when Congress amended the Act to include the definition of "Special Immigrant Juvenile" ("SIJ") in 8 U.S.C. § 1101(a)(27)(J). Recinos v. Escobar , 473 Mass. 734, 46 N.E.3d 60, 63 (2016). The 1990 definition required (1) a finding by a state court that the child is "dependent on a juvenile court" and eligible for long-term foster care, and (2) a finding that it is "not in the child's best interests to return to his or her country of origin." Id. at 64. In 1997, Congress modified the definition to include a child who had been "legally committed to, or placed under the custody of, an agency or department of a State" and required that eligibility for long-term foster care be "due to abuse, neglect, or abandonment." Id.[4]
In 2008, the Act was amended to eliminate the foster care requirement and to expand eligibility to children whom a juvenile court has placed in the custody of an "individual or entity appointed by a State or juvenile court." Id. (citing Pub.L. 110-457, § 235(d)(1), 122 Stat. 5044 (2008)). This new language "was intended to bring within the application of [SIJ] status children for whom a 'juvenile court' had appointed a guardian." In re Jose H. , 54 Misc.3d 324, 40 N.Y.S.3d 710, 714 (N.Y. Sup. Ct. 2016). That amendment also added the condition that reunification with one or both parents "is not viable due to abuse, neglect, abandonment[.]" Recinos , 46 N.E.3d at 64.
The current version of 8 U.S.C. § 1101(a)(27)(J), defines a Special Immigrant Juvenile as an "immigrant who is present in the United States":
(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status[.]
Pursuant to this definition and the implementing regulation ( 8 C.F.R. § 204.11 ), a child who has obtained an order from a qualifying state court with the requisite findings, and who is under 21 years of age and unmarried, may file an application for SIJ status with federal authorities.
B. State Court's Role in SIJ Status Determination
As noted, SIJ status "is intended to provide relief from deportation to children *571 who are in the United States illegally and who, because abuse, neglect, or abandonment prevents reunification with one or both of their parents, find themselves in need of the intervention of a 'juvenile court'-typically in the form of guardianship, foster care, or other provisions for their care and custody." Jose H. , 40 N.Y.S.3d at 713. "When a 'juvenile court' has such a child before it, federal law permits it to make certain Special Findings which can serve as the basis for a Special Immigrant Juvenile application with immigration authorities." Id. (emphasis added).
The procedure for obtaining SIJ status is "a two-step process in which a state court makes predicate factual findings ... within its traditional concern for child welfare[.]"[5] H.S.P. v. J.K. , 223 N.J. 196, 121 A.3d 849, 859 (2015). Under 8 C.F.R. § 204.11(c), the immigrant child must be "declared dependent on a juvenile court ... in accordance with state law governing such declarations." "The federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual findings should be made. The only limitation is that the court entering the findings fit the federal definition of a 'juvenile court.' " Simbaina v. Bunay , 221 Md.App. 440, 109 A.3d 191, 200 (2015). The USCIS defines a "juvenile court" as a court "having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). With those state court findings in hand, the juvenile can apply to federal authorities, who will decide whether the findings "are adequately supported" and "whether the primary purpose of the child's application to the [state] court was to seek relief ... from abuse, neglect, or abandonment-or was merely to obtain [SIJ] status." Jose H. , 40 N.Y.S.3d at 715.
Here, Mother claims that the circuit court erred in not making these findings of fact as to Son, but she points to no authority to support the notion that the state court was required to make such findings, and we have found no such authority in our independent research on the matter. Some state legislatures, such as Florida and California, have enacted statutes authorizing a lower court to conduct a proceeding for the sole purpose of making the SIJ findings of fact.[6] In other states, appellate courts have held that their juvenile courts have a duty to make the SIJ findings described in the federal statute, despite the lack of any state law explicitly permitting or requiring them to do so.[7] Missouri has no such statute or legal precedent;
*572 nor do we find anything in the federal statute that mandates or requires a state court to issue such findings of fact. Indeed, we find no requirement for a Missouri court to issue special findings of fact for the specific purpose of qualifying a juvenile for SIJ status.
As noted, just because Mother asked for the special findings for SIJ purposes does not mean that the court had to make those particular findings. Under Rule 73.01(c), "if requested by a party [the court] shall ... include in the opinion findings on the controverted material fact issues specified by the party." (Emphasis added.) Here, however, the requested findings did not relate to "controverted material fact issues" in the dissolution case before the court. While the dissolution court could have made such findings had it chosen to do so, there are many reasons that a court, while able to address specific issues, might decline to do so. For example, Missouri courts generally seek to resolve cases on the narrowest ground possible. See Barnes v. Bailey , 706 S.W.2d 25, 33 (Mo. banc 1986) ; Int'l Div., Inc. v. DeWitt & Assoc., Inc., 425 S.W.3d 225, 233 (Mo. App. 2014) (issues "not essential to a disposition of the case should not be addressed").
Recently, a Virginia appellate court thoroughly and thoughtfully examined this very issue and reached the same conclusion in Canales v. Torres Orellana , 67 Va.App. 759, 800 S.E.2d 208 (2017). We quote at length from that opinion:
Nothing in the relevant federal statutory scheme can fairly be read as an attempt by Congress to convey jurisdiction to state courts to actively participate in immigration and naturalization decisions. 8 U.S.C. § 1101(a)(27)(J) is simply one of thirteen separate definitions of the term "special immigrant." ....
[B]ecause the SIJ statute is within the definitions portion of Title 8, it is clear that 8 U.S.C. § 1101(a)(27)(J) only defines a special immigrant for the purpose of interpreting and enforcing the entirety of Title 8, and nothing more. There is no language in any federal statute mandating that state juvenile courts make the SIJ findings. Further, the SIJ statute does not request, much less order, state courts to make specific, separate SIJ findings; rather, it allows the appropriate federal entities to consider a state court's findings of fact, as recorded in a judgment order rendered under state law, when determining whether an immigrant meets the SIJ criteria. In other words, the SIJ definition only lists certain factors which, if established in state court proceedings, permit a juvenile immigrant to petition the United States Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security for SIJ status- 8 U.S.C. § 1101(a)(27)(J) does not require that the state court make such findings or convey jurisdiction upon them to do so.
Id. at 217. The Canales Court further explained that the SIJ statute "simply allows immigrant juveniles to use certain state court judgments and supporting factual findings ... to support a petition for SIJ
*573 status with [federal authorities]." Id. at 223. "[T]he statutory scheme and relevant federal guidance make clear that such orders should have been generated by state courts applying state law in the normal course of their responsibilities under the laws of the respective states." Id. at 218. In other words, if a state court in the regular course of business happens to make findings that fit within these parameters, then the juvenile can take those findings to the federal authorities and apply for SIJ status. "Federal authorities then determine whether the state court findings are sufficient to meet the requirements of the SIJ statute." Id. at 223.[8]
In Missouri, making such findings in the regular course of business would ordinarily take place in a juvenile proceeding such as child-protective, juvenile-delinquency, or other "juvenile court" intervention based on abuse or neglect under the Juvenile Code (Chapters 210 and 211, RSMo), or in a guardianship proceeding conducted by a probate court pursuant to the Probate Code (Chapter 475). Such findings could arise from a dissolution case in certain situations, such as, for example, where the court determines that placing a child in the custody of a third party is in the child's best interest. See § 452.375.5(5). In the proper circumstances, a court exercising jurisdiction over an immigrant child may, while acting in parens patriae , find it necessary to make the findings at issue herein. That obligation arises neither from federal law or regulation, nor from the request of a litigant, but solely from that judicial officer's obligation to act in the best interest of that child. Depending upon the facts found by the state court to support its judgment in any of the above proceedings, such findings could arguably also support a decision to grant SIJ status, but, as noted, that is for the federal authorities to decide.
Our reading of the SIJ statute is in accordance with the analysis in Canales , which is consistent with the idea that federal law cannot mandate a state court to make findings but may rely on state courts in the proper circumstances to make such findings that are in a child's best interest and required of the court while in the position of in loco parentis. We cannot convict this dissolution court of error in failing to make the requested special findings where it was not required to do so in the discharge of its duty to act in loco parentis.[9]
C. Circuit Court's Role in a Dissolution Case
The issue on appeal arose as an extraneous matter to a dissolution case. While the court granted Mother custody of Son, this case is unlike the "child-protective, juvenile-delinquency, or guardianship *574 proceedings, or any other 'juvenile court' intervention providing 'relief from abuse or neglect.' "[10] See Jose H. , 40 N.Y.S.3d at 716. In a dissolution case, the child is not a party, the court does not exercise jurisdiction directly over the child, but over the parents of the child, and the child is not subject to sanction for non-compliance with any judgment. Here, Mother petitioned for dissolution and asked for sole physical and sole legal custody of Son. The dissolution court accorded full relief to Mother, granting both requests, and thereby did what it was required to do in this case.
In some dissolution cases, certain written findings are mandated. For example, when the parties cannot agree on a custodial arrangement and the trial court chooses the arrangement, it must make written findings detailing the specific relevant factors as to why that arrangement is in the child's best interest. § 452.375.6. The same is true if the court rejects a proposed custodial arrangement, or where the court must rule on a sub-issue of custody, such as the parenting-time allocation. Id. ; Speer v. Colon, 155 S.W.3d 60, 61-62 (Mo. banc 2005) ; Schroeder v. Schroeder , 486 S.W.3d 342, 345 (Mo. App. 2015). No written findings are required, however, where the parents have agreed upon a custody arrangement and parenting plan. See Simon-Harris v. Harris , 138 S.W.3d 170, 178 (Mo. App. 2004). As long as the plan is not unconscionable and is in the child's best interests, the court simply approves it. The same is true in a case, such as this, where the dissolution action (and, hence, the proposed custody arrangement) is uncontested.
Here, the dissolution court made specific findings that Father "affirmatively abandoned" both Mother and Son in 2003 and that Mother was seeking sole legal and physical custody of Son, as she believed that it was "in the best interest of [Son] due to Father's abandonment and neglect of [Son]." The court ultimately decreed that "it is in the best interest of [Son] that [Mother] be granted sole legal and sole physical custody and designated as the residential custodian for school and mailing purposes" and adopted Mother's parenting plan.
The trial court determined that it was not required to nor capable of making the special findings requested by Mother. We conclude that the circuit court was, in fact, not required to issue the special findings of fact that Mother sought, and, thus, the court cannot be convicted of error for failing to make such findings. Point I is denied.
IV. Point Two
Mother also argues that the trial court erred in denying her request for special findings of fact because the trial court based that denial "solely upon the party's nationality." In its written judgment, the court denied the request for special findings because there was no personal service on Father, no guardian-ad-litem was appointed, Son was not a party to the action, *575 and neither of the parents is a United States citizen. At the conclusion of the hearing on Mother's motion for reconsideration, the trial judge stated that he could not justify making arrangements for or suggesting that an undocumented minor should stay in the United States when that minor does not have a parent in the United States who is a legal citizen.
Mother claims that the court's use of her immigration status "as the sole dispositive factor to deny ... an Order of Special Findings of Fact" violated her and Son's due process and equal protection rights, citing Plyler v. Doe, 457 U.S. 202, 210-13, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (illegal aliens are protected by the Due Process and Equal Protection Clauses of the United States Constitution), and Williams v. Williams, 328 F.Supp. 1380, 1383 (V.I. 1971) (denying access to a dissolution court based solely on a possible immigration violation denies due process and equal protection).
We disagree. First, it is abundantly clear that the trial court's decision was not based "solely" upon Mother's immigration status. But, in any event, we have already determined that the court was in no way required to make these findings in order to properly rule on Mother's dissolution petition. Thus, we cannot say that the court erred in declining to make the requested findings. In reviewing a court-tried case, we are concerned only with the correctness of the result, not the route taken to reach that result. In re Marriage of Estep , 978 S.W.2d 817, 818 (Mo. App. 1998). Point II also is denied.
Based on the foregoing, we affirm the circuit court's judgment.
All concur.

Missouri statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement and the 2014 and 2015 Non-Cumulative Supplements.

Son testified that his birthdate is June 27, 1998, but other parts of the record list it as July 28, 1998. In any event, at the time of the dissolution hearing, Son was seventeen years old. The couple's daughter was nineteen.

This appears to be an issue of first impression in Missouri. "Although cases from other jurisdictions are not conclusive or binding precedent, they can provide useful and insightful guidance on matters of first impression." State ex rel. Safety Roofing Sys., Inc. v. Crawford , 86 S.W.3d 488, 493 n.4 (Mo. App. 2002).

As explained by Gregory Zhong Tian Chen in Elian or Alien? The Contradictions of Protecting Undocumented Children Under the Special Immigrant Juvenile Statute , 27 Hastings Const. L.Q. 597, 605 (2000) :
Children who apply for SIJ status may be categorized into two groups: those who enter the state juvenile dependency system prior to any contact with the INS [Immigration and Naturalization Service] and those who are first detained by the INS and later seek the protection of the dependency system. In practice, most undocumented minors receive SIJ protection after they first come to the attention of the child welfare system based on a child abuse report filed by police, social workers, or other concerned persons.

"The theory behind this two-step process is that state juvenile courts have the resources and expertise to make findings regarding abuse, neglect, and abandonment, and determinations of what is in the best interests of a child, while federal authorities retain ultimate power to regulate immigration," including determining whether the child will be granted permanent status as an SIJ. Jose H. , 40 N.Y.S.3d at 716 ; Eddie E. , 234 Cal. App. 4th at 326, 183 Cal.Rptr.3d 773.

Florida's statute provides: "If the child may be eligible for special immigrant juvenile status, the department or community-based care provider shall petition the court for an order finding that the child meets the criteria for special immigrant juvenile status." Fla. Stat. Ann. § 39.5075(4) (West 2005). In 2014, California enacted Senate Bill 873, which "explicitly allows juvenile, probate, and family courts to make necessary SIJS finding, and potentially allows other trial courts to make SIJS finding." Gregory E. Catangay, Abandoning the Status Quo: Towards Uniform Application of Special Immigrant Juvenile Status , 20 U.C. Davis J. Juv. L. & Pol'y 39, 51-53 (2016).

See, e.g., Massachusetts: Guardianship of Penate , 477 Mass. 268, 76 N.E.3d 960, 966 (2017) ("Because this fact-finding role is integral to the SIJ process, the Probate and Family Court judge may not decline to make special findings if requested by an immigrant child under [the SIJ statute]."); New Jersey: H.S.P. , 121 A.3d at 852 ("Family Part courts faced with a request for an SIJ predicate order should make factual findings with regard to each of the requirements listed in 8 C.F.R. § 204.11."); Minnesota: Guaman , 879 N.W.2d at 673 (where the record "contains evidence as to each potential SIJ finding, we conclude that the probate court abused its discretion by declining to consider the request for SIJ findings"); and Georgia: In the Interest of J.J.X.C. , 318 Ga.App. 420, 734 S.E.2d 120, 124 (2012) ("[T]he [juvenile] court had a duty to consider the SIJ factors and make findings.").

The USCIS is required to review the juvenile court order to ensure that the request is bona fide , meaning that "the juvenile court order was sought to obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit." USCIS Policy Manual, vol. 6, pt. J, ch. (2)(D)(5), available at https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter2.html (last visited on October 25, 2017).

We note that, when Congress desires to compel findings by the state courts, it can do so by making federal funds contingent on such findings. See, e.g. , Adoption and Safe Families Act of 1997, Pub.L. 105-89, 111 Stat. 2115(codified in various section of 42 U.S.C.), under which the federal government reimburses states for foster care maintenance and adoption assistance payments. For a juvenile in the custody of the Children's Division to be eligible for such funding, the juvenile court or family court must make certain specific findings, i.e. , "whether continuation of the juvenile in the home is contrary to the welfare of the juvenile," and "whether reasonable efforts were made ... to prevent or eliminate the need for removal of the juvenile from the home." Rule 124.07, Comment.

As this was a Chapter 452 dissolution case, none of the resources available to a juvenile court was in place here. Various provisions of the Juvenile Code require the Children's Division and juvenile officer to evaluate, investigate, and assess the child's and family's background and make written reports of such findings. See, e.g. , §§ 207.020.1, 210.109, 211.401.1(1). Ultimately, a juvenile court has access to "medical reports, psychological or psychiatric evaluations, investigat[ive] reports of the children's division, social histories, home studies, and police reports and law enforcement records." See § 211.319.3; Rule 118.01. Here, no juvenile officer or Children's Division was involved. While the court could have ordered an "investigation and report concerning custodial arrangements" under § 452.390, we cannot say that the court erred in concluding that it was unnecessary under these circumstances.