2023 PA Super 135

| | | |
|---|---|---|
| MARIA ESTELA VILLEGAS RIVAS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUANNA DAYEL VILLEGAS AND | : | No. 2517 EDA 2022 |
| MARVIN DAVID LANDAVERDE | : | |

Appeal from the Order Entered September 7, 2022
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2022-04171-CU

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

CONCURRING STATEMENT BY SULLIVAN, J.:          **FILED JULY 27, 2023**

The learned majority thoroughly and persuasively explains its holding

that the trial court abused its discretion by refusing to consider a request for

findings related to the subject child's status as a special immigrant juvenile

("SIJ"). This Court's precedent compels me to agree that the trial court erred

in suggesting that it lacked jurisdiction to make such findings. ***See Orozco***

***v. Tecu***, 284 A.3d 474, 479 (Pa. Super. 2022). However, I write separately

based on my view that the SIJ statute, 8 U.S.C.A. § 1101(a)(27)(J), presents

unique problems, which, without further guidance from our Supreme Court

and General Assembly, will continue to challenge our orphans', juvenile, and

family courts.

The SIJ statute and the implementing regulations are remarkable insofar

as they enlist state courts as part of the immigration process and delegate to

those courts' findings that, *inter alia*: reunification with one or both of the

child's parents is not viable due to abuse, neglect, or abandonment and it would not be in the child's best interests to return to a foreign country of origin or last habitual residence. *See* 8 U.S.C.A. § 1101(a)(27)(J); 8 C.F.R. § 204.11(b)-(c). Although a state court does not make an ultimate immigration decision, state courts are an integral part of the SIJ status proceedings. *See Orozco*, 284 A.3d at 477. This hybrid approach of engrafting federal immigration law unto state law rests on a presumption that state courts have special competence when addressing abandonment, neglect, and abuse and determining a child's best interests. *See In re J.J.X.C.*, 734 S.E.2d 120, 124 (Ga. Ct. App. 2012).

Pennsylvania courts have only recently addressed the SIJ statute in published decisions in *Orozco* and *Velasquez v. Miranda*, --- A.3d ---, 2023 PA Super 111, 2023 WL 4069151 (Pa. Super. 2023).[1] The SIJ statute is not new, however, and other state courts' interpretations and applications of the statute have resulted in inconsistent decisions.[2]

---

[1] A petition for reargument in *Velazquez* is currently pending before this Court.

[2] Congress enacted the first SIJ statute in 1990 and amended it in 1991, 1994, 1998, and 2005. The earlier iterations of the statute appear to have been limited to cases where a child's parents brought a child to the United States, but the child became eligible for long-term foster care. *See Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 221-22 (3d Cir. 2003) (noting that the original SIJ statute provided an alternative to deporting a child along with abusive parents or deporting a child to parents who abandoned the child once in the United States). Congress amended the statute in 2008 to its current form.
*(Footnote Continued Next Page)*

Initially, interpreting the SIJ statute as requiring a state court to make certain findings is problematic. The SIJ statute itself contains no language that mandates a state court make SIJ findings, *see **Canales v. Torres Orellana***, 800 S.E.2d 208, 217 (Va. Ct. App. 2017), nor could the federal SIJ statute and associated regulations so command without implicating the principles of federalism and the Tenth Amendment. ***Cf. MCI WorldCom, Inc. v. Pennsylvania Pub. Util. Comm'n***, 844 A.2d 1239, 1251 (Pa. 2004) (noting that "The Tenth Amendment prohibits Congress from requiring states to administer federal programs against their will[,]" but a "[f]ederal regulation does not commandeer a state's legislative power or violate the Tenth Amendment as long as the state is given a choice regarding whether or not to enforce the regulation"); ***accord de Rubio v. Rubio Herrera***, 541 S.W.3d 564, 573 n.9 (Mo. Ct. App. 2017).

Next, no settled interpretation or application of the SIJ statute has developed among the other states, and there is no unified body of law for considering what evidence will be sufficient to require SIJ findings.

Commentators have noted the striking variance among the state courts' interpretations and applications of the SIJ statute. ***See, e.g.***, Richard F. Storrow, Unaccompanied Minors at the U.S.-Mexico Border: The Shifting Sands of Special Immigrant Juvenile Status, 33 Geo. Immigr. L.J. 1, 20-29 (2018) (discussing state court decisions); Gregory E. Catangay, Abandoning the Status Quo: Towards Uniform Application of Special Immigrant Juvenile Status, 20 U.C. Davis J. Juv. L. & Pol'y 39, 73-74 (2016) (arguing that the variances in state law undermines the intent of the SIJ statute and that Congress should remove the state court requirements from the SIJ and keep the program within the purview of the federal system).

Pennsylvania has only recently begun to take first steps into this area. *See Velasquez*, 2023 WL 4069151, at *8 (holding that a child did not meet the statutory definition of an SIJ when the child resided with one parent in the United States; the child was not adjudicated dependent or under the custody of a state agency, entity, or individual appointed by a state court; the trial court's grant of sole legal and physical custody of the child to the mother was not an appointment of a custodian for the child).[3] I acknowledge that our family, juvenile, and orphans' courts have unique competence to determine the best interests of a child, particularly when a parent and the child have a significant connection to Pennsylvania and substantial evidence exists in Pennsylvania. Moreover, findings of abuse, abandonment and neglect under our law and SIJ findings may overlap. However, our courts will face obvious practical limitations because substantial evidence is or may not be readily available in Pennsylvania and, as here, the court may have to determine whether past abuse, neglect, or abandonment occurred in the foreign country and whether it is not in a child's best interest to return to that county. Furthermore, the trial court in this case will not have the benefit of adversarial testing of the evidence or legal theories.[4] Thus, without settled procedures

---

[3] Other state courts interpreting the SIJ statute have reached contrary conclusions. *See, e.g.*, *De Guardado v. Guardado Menjivar*, 901 N.W.2d 243, 248 (Minn. Ct. App. 2017).

[4] Here, the moving party filed an unopposed petition for custody of child against the child's parents who resided in a different country and did not participate at the hearing.

- 4 -

for bringing and considering a request for SIJ findings, it is likely that our courts will face similar confusion and produce similar inconsistent results as experienced in other state courts.

Lastly, I would note that other states have enacted legislation addressing SIJ findings.[5]  While I concur with today's narrow decision based on its application of **Orozco**, I believe that the issues concerning the SIJ statute demand attention from our General Assembly and the rulemaking authority of our Supreme Court.

Thus, I respectfully concur in the result.

Judge Bowes joins this concurring statement.

---

[5] **See, e.g.**, Cal. Civ. Proc. Code § 155; Colo. Rev. Stat. Ann. § 14-10-123 (1.5); Conn. Gen. Stat. Ann. § 45a-608n(c); 705 Ill. Comp. Stat. Ann. 405/1-4.3(a); Me. Rev. Stat. tit. 22, § 4099-I 3.; Minn. Stat. Ann. § 257D.01 subd.4; Neb. Rev. Stat. Ann. § 43-3806; Nev. Rev. Stat. Ann. § 3.2203(1); Wash. Rev. Code Ann. § 13.90.901(1)-(2).